# WANDELL CHOCOLATE COMPANY

## vs.

## MILTON GOLDSMITH.

*Contract of Employment—Part Time Salesman—Termination of Contract—Action by Employee— Burden of Proof.*

In an action by one employed as salesman, to recover the agreed compensation, letters from him to defendant employer, containing reports and inquiries as to business, *held* admissible as tending to show that plaintiff performed his duties up to the date of his discharge, issue having been joined on the general issue plea, and it not appearing, at the time such evidence was offered, what the defense would be. p. 153

That a prayer granted at plaintiff's request was ·defective in form, as not requiring the jury to· find a breach by defendant of the contract in suit, was not prejudicial error, the breach being practically admitted. p. 154

The burden of proving that plaintiff agreed to cancel the contract in suit was upon defendant. p. 154

In an action on a contract of employment, in which the principal issue was whether plaintiff agreed to the cancellation of the contract, it was proper to refuse to instruct the jury that if their minds were "in a state of equipoise or even balance, after hearing all the evidence, their verdict must be for the defendant." p. 154

It was proper for the court, in granting a prayer that plaintiff was not entitled to recover if the contract in suit was terminated by agreement, to strike out a part of the prayer which told the jury that, in determining whether the contract was so terminated, they might take into consideration certain facts testified to, it not being for the court to emphasize particular facts. p.·154

In an action, by one employed as salesman, for breach of the contract of employment, it was proper to refuse a·prayer that

if the jury find for plaintiff they must deduct such sums as he might have earned by the exercise of proper diligence in seeking for employment in similar business, it appearing that, as defendant knew, plaintiff was engaged in selling several lines of goods other than those of defendant, and it not appearing that such other employments were inconsistent with the contract in suit, that the amounts earned in such other employments, after plaintiff's discharge, could not have been properly earned by him if he had not been discharged, or what he could have earned by the exercise of proper diligence in seeking for employment.                                     pp. 155, 156

In an action by an employee against his employer by reason of a wrongful dismissal, the burden is on the defendant to show what plaintiff might have earned by due diligence in seeking other employment after the dismissal.          p. 156

*Decided January 9th, 1923.*

Appeal from the Superior Court of Baltimore City (DUFFY, J.).

Action by Milton Goldsmith against the Wandell Chocalate Company, a corporation. From a judgment for plaintiff, defendant appeals. Affirmed.

The prayers referred to in the opinion were as follows:

*Plaintiff's First Prayer.*—The Court instructs the jury that if they shall find that the defendant entered into a contract with the plaintiff on March 24, 1920, and that it was agreed that the plaintiff was to receive the sum of thirty-five dollars per week until the end of the year 1920, then the jury shall find for the plaintiff, unless they shall find that the plaintiff agreed to terminate the contract, provided that the jury shall further find that the plaintiff tendered himself ready and willing to perform the services required by said contract.

*Plaintiff's Third Prayer.*—The court instructs the jury that the burden of proof is upon the defendant to prove that the plaintiff agreed to cancel the contract.

*Defendant's Second Prayer.*—The court instructs the jury that there is no evidence in this case legally sufficient to entitle the plaintiff to recover and their verdict must be for the defendant.

*Defendant's Third Prayer.*—The court instructs the jury that under the pleadings in this case there is no evidence legally sufficient to entitle the plaintiff to recover and their verdict must therefore be for the defendant.

*Defendant's Fourth Prayer.*—The court instructs the jury that the burden is upon the plaintiff to prove his case by a fair preponderance of affirmative evidence and if the minds of the jury are in a state of equipoise or even balance, after hearing all of the evidence their verdict must be for the defendant.

*Defendant's Fifth Prayer.*—The court instructs the jury that the plaintiff is not entitled to recover in this case if they find from the evidence that the contract dated March 24, 1920, was terminated by agreement of the parties thereto provided they find that the plaintiff was fully paid to the date of such termination if the jury so find, *and in deciding whether or not there was a termination of the contract sued on the jury may take into consideration the subsequent conduct of the parties as well as any letters or conversations passing between them.* (Granted after striking out the words in italics.)

*Defendant's Sixth Prayer.*—The court instructs the jury that in order for the plaintiff to recover in this case they must find that the defendant committed a breach of its contract and that the plaintiff did not acquiesce in such breach, and if the jury find for the plaintiff they must deduct from the sum due the plaintiff under the contract sued on such sums as the jury find the plaintiff actually earned in the interim or such sum he might have earned by the exercise of proper diligence in seeking for employment in the same or similar business.

*Defendant's Seventh Prayer.*—The court instructs the jury that even if the defendant was guilty of a breach of the

contract sued on this case the plaintiff cannot recover the full sum due under said contract unless the jury find from the evidence that the plaintiff made diligent effort to obtain other employment in the same or similar business and failed to obtain such employment and if the jury find from the evidence that the plaintiff failed to make such diligent effort, he must be charged with such amount as he might have earned if he had made such effort.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and ADKINS, JJ.

*Eugene Frederick,* with whom were *Blades, Rosenfeld & Frederick* on the brief, for the appellant.

*Leon Pretzfelder* and *Alan H. Fisher,* with whom were *Fisher & Fisher* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This suit grows out of a contract under which the appellee was employed by appellant to represent it in Washington in the sale of its chocolate products.

The contract is in the form of a letter as follows:

"Baltimore, Maryland, March 24th, 1920.
"Mr. M. L. Goldsmith,
   "2706 27th St., N. W.,
      "Washington, D. C.
"Dear Sir:

"This letter will operate as a contract between this concern and yourself.  From this date until the end of the year 1920, we will pay you a weekly salary of $35 per week.

"In excess of this, we will pay you a commission of 5% on all business done in the City of Washington, whether sold directly by you or not, amounting to more than $25,000.

"We sincerely hope that this contract will operate profitably for both parties concerned, and that we

will have the pleasure at its termination of renewing · it for a longer period.

"With very best wishes, I am,

"Yours very truly,

(Signed) Lewis S. Wandell,

President

"Wandell Chocolate Company.

"Accepted: M. Goldsmith (Signed)."

At the time of entering into this contract appellee was a salesman in Washington, handling four or five various lines for the drug trade "and had a certain following in these lines; that is candy line, stationery and sundries and one or two other lines." He had previously represented Mr. Guth, of the Chocolate Products Company, in the chocolate line. Mr. Wandell had also been connected with that company and it was there that appellee became acquainted with him. Wandell left Guth and started the new company which was in competition with Guth in the same character of business. It seems appellee was unable to make terms with the Wholesale Drug Exchange of Washington to distribute appellant's goods on such terms as appellant was willing to accept, the exchange offering to distribute the goods on a ten per cent. margin and appellant being willing to allow only five per cent., and appellant decided that it would not be profitable for it to employ appellee to make sales independent of the exchange, so at the end of two weeks appellee was paid for that time and discharged by the following letter:

"April 3rd, 1920.

"Mr. M. L. Goldsmith,

"2706 27th St., N. W.,

"Washington, D. C.

"Dear Mr. Goldsmith:

"We sent you check for $70 yesterday, covering the past two weeks.

"When you and I discussed your coming with us, I took it for granted we could sell the Washington Wholesale Drug Exchange, and that you could make

yourself valuable in picking up small orders from
its members and turning it over to the exchange.

"We can't give 10% off our prices. That's impos-
sible.   Our margin is too small, and therefore, we
apparently can't sell them goods.  This cut any chance
of doing enough business in Washington to warrant
our having regular salesman there, and we will cover
that city 'with the house salesman, who covers Balti-
more and District.

"I am very sorry that this condition has come about,
as we like you very much, and would like to have had
you identified with us.   I know that you will appre-
ciate the necessity of my writing you to this effect.

"Hope everything is going fine with you and will
continue to, and with all good wishes, I am,

"Yours very sincerely."

Thus it appears that there was no dispute about the con-
tract and none about its breach by appellant, the only ques-
tion being as to whether it was acquiesced in by appellee.
As to this the testimony is conflicting.   There are two bills of
exception in the record, one to the admission of certain letters
from appellee to appellant, seven in number, and the other
to the ruling of the trial court on the prayers.

We find no error in the admission of the letters.   They
all were in the nature of reports or inquiries, and tended to
show that appellee was performing his duties under the con-
tract.   Issue was joined in this case on the general issue plea
and it was a part of plaintiff's case to show that he had per-
formed his obligations under the contract.   The letters were
relevant and therefore proper evidence.   At that stage of
the proceedings plaintiff could not know what the defense
would be.

The second exception is to the granting of plaintiff's first
and third prayers, and to the refusal of the defendant's sec-
ond, third, fourth, sixth and seventh prayers, and to the
modification of defendant's fifth prayer.   The *Reporter* is
requested to set out these prayers in the report of the case.

Plaintiff's first prayer is defective in form in that it does not require the jury to find a breach by defendant. But as there is no conflict of testimony as to the breach, it being practically admitted, there was no prejudicial error in granting this prayer. See *McGrath* v. *Marchant,* 117 Md. 480.

Plaintiff's third prayer properly instructed the jury that the burden was upon the defendant to prove that plaintiff agreed to cancel the contract.

Defendant's second and third prayers were demurrers to the evidence and were properly refused.

Defendant's fourth prayer was misleading and therefore erroneous in that it sought to have the jury instructed that "if the minds of the jury are in a state of equipoise or even balance, after hearing *all of the evidence,* their verdict must be for the defendant." A part of the evidence was as to whether plaintiff agreed to the cancellation of the contract, and this was the principal issue in the case. It would have been clearly wrong, and inconsistent with plaintiff's third prayer, to instruct the jury that if their minds were in even balance as to this, their verdict should be for defendant. And yet that is involved in defendant's fourth prayer.

The fifth prayer was properly amended by striking out the concluding part, which sought to have the jury told that they might take into consideration certain facts testified to. This Court said in *Moore* v. *McDonald,* 68 Md. 321: "We cannot approve the practice of granting prayers of this description. When the evidence has been admitted the fact of its admission gives the jury the right to consider every fact in the case that is proven to their satisfaction. It is not the proper office of the court to call the attention of the jury to this or that fact, and inform them that they may take it into consideration in making up their verdict. Such instructions coming from the court, are apt to give undue weight and prominence to the fact thus called to their attention. It is a practice liable to abuse and to mislead." See also *Worcester County* v. *Ryckman,* 91 Md. at p. 4.

There was no error in refusing defendant's sixth and seventh prayers. The principal objection to them is, they ask the court to apply the same measure of damages to the breach of contract for a part time employment, as that applicable to a case of hiring for the full time of the employee. The distinction is clearly shown in *Jaffray* v. *King,* 34 Md., at p. 222, where the contract was of the same nature as that involved in the present case. There the jury was instructed that the measure of damages was the salary fixed by the contract. This Court said in that case: "The objection to this instruction, on the part of appellants, is, that in a case like this, where the suit is for a breach of the contract by a wrongful dismissal, the defendants may reduce the damages by what the plaintiff actually earned or might, by due and reasonable diligence, have earned after his dismissal, and hence the defendants were entitled to a deduction for the $200 so earned by the plaintiff.

"If we assume this rule to be correct, and to apply to ordinary cases where the contract is for the whole time and services of the plaintiff, and he seeks redress in this form of action, we yet think there was no error in the court's instruction in this case. The measure of damages was fixed by the contract, that is, the stipulated salary for the stipulated period, and by the construction we have placed on that contract, the plaintiff was at liberty to engage in any other employment consistent with the discharge of his duty thereunder. If, therefore, the defendants sought to reduce the damages thus fixed they must do so, not simply by showing what sum the plaintiff actually earned, or might have earned, after his dismissal, but by showing further that he could not have earned it without a violation of his duty under the contract, if he had not been discharged. On this point, there is, in our opinion, an entire failure of proof, * * * and, as we have said, the *onus* was on the defendants to establish this before they could demand a reduction of damages for the amount so earned."

There is no inconsistency between the above rule and that applied in cases cited by appellant. It is simply applying the same process of reasoning and the same underlying princile to different states of fact.

The above mentioned case is cited by nearly all, if not all, the cases referred to by the appellee.

In the present case appellee was engaged in selling several lines of goods besides those of appellant, and this with the knowledge of appellant; and there is nothing in the record to show that such other employments were inconsistent with the contract now under consideration. There was an entire failure of proof, not only that the amount earned by appellee in such other employments, after his dismissal by appellant, could not have been earned by him without a violation of his duty under the contract, if he had not been discharged, but as to what, if anything, he could have earned "by the exercise of proper diligence in seeking for employment in the same or similar business" as that of appellant. And the burden was upon appellant to show this. *Cumberland* v. *Slack,* 45 Md., at p. 180.

Finding no reversible error in the rulings of the learned trial court, the judgment will be affirmed.

*Judgment, affirmed, with costs to appellee.*