488 A.2d 182

**Edward A. GRIFFITH**

v.

**ONE INVESTMENT PLAZA ASSOCIATES.**

**Edward A. GRIFFITH**

v.

**The TOWSON INVESTMENT BUILDING, INC.**

**Nos. 693, 694, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Feb. 15, 1985.

**2**

T. Bruce Hanley, Towson, for appellant.

Harris James George, Towson, and Richard D. LaShier (Evans & George, Towson, on the brief), for appellees.

Argued before MOYLAN, ADKINS and BLOOM, JJ.

ADKINS, Judge.

Appellant, Edward A. Griffith, sued appellee One Investment Plaza Associates (Associates) and appellee The Towson Investment Building, Inc. (Towson).[1] In each case, he alleged an oral agreement between himself and Associates. By virtue of the agreement, he averred, he was entitled to commissions from renewals of a leased portion of The Investment Building in Towson. Associates and Towson each demurred on the ground, *inter alia*, that Griffith's claim was barred by the Statute of Frauds. In addition,

---

1. The appellees were sued separately. By order of this court, the cases were consolidated for argument.

Towson counterclaimed for a declaratory judgment that it was not liable to Griffith.

The Circuit Court for Baltimore County sustained both demurrers without leave to amend. It also entered a declaratory judgment to the effect that the Statute of Frauds barred Griffith's claim against Towson. The issue on appeal is whether the statute bars Griffith's claims against both appellees. The facts, taken as established by virtue of the demurrers and as stipulated to by the parties, are these:

In 1971 Griffith and Associates (the then owner of The Towson Investment Building) entered into an oral agreement. Under that agreement Associates undertook to pay Griffith certain real estate commissions for leasing space in The Towson Investment Building (Building). Griffith negotiated various leases for portions of the Building and was paid initial commissions and renewal commissions by Associates. Among those leases was one between Associates as landlord and the State of Maryland as tenant. This was a five-year lease commencing in 1977. It contained options for five one-year renewals.

In 1981 Associates sold the Building to Towson. In 1982 the State exercised its option to renew the lease for a one-year term. In 1983 the State exercised its option to renew for a second one-year term. These renewals form the basis for Griffith's claims for commissions.

Griffith advances several reasons to support his contention that the Statute of Frauds does not bar these claims. They include part performance of the contract and the purported effect of § 14–105 of the Real Property Article (dealing with circumstances under which a real estate broker is entitled to commissions). We need not address these arguments, but nevertheless we agree with Griffith that the statute does not preclude his claims because the oral contract was capable of being performed within one year.

Article 39C, § 1 of the Maryland Code provides, in pertinent part:

No action may be brought:

\*     \*     \*     \*     \*     \*

(3) Upon any agreement that is not to be performed within the space of one year from the making thereof;

Unless the contract or agreement upon which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged, or some other person lawfully authorized by him.

Appellees argue that this provision is an absolute bar to Griffith's actions because the lease between Associates and the State was itself entered into more than one year after the 1971 oral contract and because that lease and its renewal options could not be performed within one year.[2] In making the arguments, the appellees miss the point. The agreement upon which we must focus here is not the lease, but the earlier oral employment contract. It was in *that* undertaking that Associates promised to pay Griffith commissions. *That* undertaking forms the essential predicate for Griffith's actions. The question is whether *that* undertaking could have been performed within one year.

So far as the record reveals, the 1971 agreement was one apparently terminable at will by either party. No term of employment is alleged. Under its terms Griffith was employed to secure tenants for the Building, and was to be paid commissions, at a specified rate, for each tenant he obtained. The facts before us do not suggest any particular time frame within which the contract was to be performed. It was, so far as we can tell, a contract of indefinite duration.

As early as 1853 the Court of Appeals opined

---

2. Appellees appear to be incorrect in their contention that the lease's renewal options could not have been exercised within a year. The lease provided that each renewal could be exercised 120 days before the end of a term of the lease. We read this to mean "at least 120 days." Thus, the tenant, had it wished to do so, could have exercised all the options during the first year of the initial term.

the statute will not apply where the contract can, *by any possibility,* be fulfilled or completed in the space of a year, *although the parties may have intended its operation should extend through a much longer period.* A contract to serve another for two years, would be within the statute; *but a contract to serve for an indefinite period, subject to be put an end to at any time upon reasonable notice, is not within the statute though it may extend beyond the year.*

*Ellicott v. Peterson,* 4 Md. 476, 488 (1853) [emphasis partly in original and partly supplied]. *See also Campbell v. Burnett,* 120 Md. 214, 224–25, 87 A. 894 (1913) ("the contract was indefinite and could have been terminated at any time").

■ Put otherwise, there are two sets of circumstances under which the one-year provision of the Statute of Frauds will bar a claim. One occurs when the parties " 'expressly and specifically' agreed that their oral contracts were not to be performed within one year." *Sun Cab Co. v. Carmody,* 257 Md. 345, 350, 263 A.2d 1 (1970). The other occurs when it is impossible by the terms of the contract for it to be performed fully within one year. *Chesapeake Financial Corp. v. Laird,* 289 Md. 594, 600, 425 A.2d 1348 (1981). Neither of these circumstances is present here. There is no allegation or stipulation to the effect that Griffith and Associates agreed that performance of the 1971 contract was not to be accomplished within a year. There is nothing before us to show that Griffith could not have performed within one year, by leasing all the space in the Building within that period. Nor is there anything to show that either Griffith or Associates could not have brought the entire arrangement to an end by terminating it within a year.

The case before us is distinguishable from *Collection and Investigation Bureau of Maryland, Inc. v. Linsley,* 37 Md.App. 66, 375 A.2d 47 (1977). In that case there was an oral agreement under which Linsley was employed for one year and in which he agreed not to compete with his

employer "for a period of two . . . years immediately following termination of employment. . . ." 37 Md.App. at 69, 375 A.2d 47. Linsley terminated his employment and went to work for a competitor. His former employer sought to enjoin the competition. We held the covenant not to compete was within the statute because, by its very terms, it could not be performed in less than two years. *Id.* at 73, 375 A.2d 47.

Similar to *Linsley* is *Warren v. Ayers,* 126 Md. 551, 95 A. 52 (1915) in which a stockholder made an oral agreement for the sale of stock. He also entered into a collateral agreement under which he agreed to remain in the corporation's employ for two years. The final disposition of his stock was to await the termination of his employment. For that reason, the Court of Appeals concluded that the oral agreement could not be performed within a year. *Id.* at 557–59, 95 A. 52. Appellees also rely on *General Federal Const., Inc. v. James A. Federline, Inc.,* 283 Md. 691, 393 A.2d 188 (1978), but that case, too, is distinguishable. In *General Federal* there was said to be an oral agreement under which Federline was to do the mechanical work on a construction project. But the relevant contract documents made it plain that included within the mechanical work was a requirement that maintenance work be performed for a period of one year *after* the completion of construction. Thus, the contract asserted by Federline was one for both the mechanical work and its maintenance for a year after its completion. Obviously, that contract could not be performed within a year of its making. *Id.* at 700, 393 A.2d 188.

Nor is *Lighthart v. Lindstrom,* 24 Ill.App.3d 918, 322 N.E.2d 70 (1975) more helpful to appellees. There a broker procured a tenant who signed a five-year lease with two five-year renewal options. Apparently, there was a contemporaneous oral agreement to pay the broker commission upon exercise of the option. The Illinois court held that the broker's claim for commissions was barred by the statute of frauds because "[i]n no way could it have been ascertained

within the first year, that the lease would be renewed some five years later." 322 N.E.2d at 72. This statement of Illinois law seems inconsistent with the Maryland rule that permits enforcement of an oral agreement that could, by any hypothesis, be performed within a year. Moreover, the opinion does not set forth the express terms of the lease and it does not explain why the renewal option could not have been exercised within a year. In any case, the alleged oral agreement seems to have been one to procure a renewal. In the case before us, so far as the record discloses, it was one to procure tenants—something that could have occurred within the year, as we have explained.

More apposite, we think, is *Home News, Inc. v. Goodman*, 182 Md. 585, 35 A.2d 442 (1944). In *Home News*, there was an oral agreement under which Goodman was to be paid commissions "on all advertising that you secure for the paper as long as those advertisers continue to place advertising in the paper." 182 Md. at 588, 35 A.2d 442. After securing advertising over a period of several years, Goodman quit. He sued the paper for an accounting, claiming commissions for advertising secured by him as long as those advertisers continued to use the paper. The Court of Appeals rejected an argument that his claim was barred by the Statute of Frauds, pointing out that his contract was at will and could have been terminated within a year. Also, the paper might have discontinued business within a year, thus ending the contract. The Court held that: "The statute does not apply if the contract can, by any possibility, be completed within a year, although the parties may have intended that its operation should extend over a much longer period, and in fact, it does so extend." 182 Md. at 594, 35 A.2d 442.

In the case before us, it may well be that Associates and Griffith contemplated that their agreement would extend over many years. It did in fact so extend. But as *Home News* makes clear, those facts are not important if, as here, the contract, by any possibility, could have been performed within a year. As the Court more recently explained:

[I]t makes no difference how long the parties expect the performance to take or how reasonable and accurate those expectations are, if the agreed performance can possibly be completed within a year. The full Corbin statement [2 A. Corbin, *Corbin on Contracts*, § 444, at 535 (1950) ] is:

> "It makes no difference how long the agreed upon performance may be delayed or over how long a period it may in fact be continued. It makes no difference how long the parties expect performance to take or how reasonable and accurate those expectations are, if the agreed performance can possibily be completed within a year. Facts like these do not bring a contract within [the one-year] provision of [the Statute of Frauds]. A provision in the contract fixing a maximum period within which performance is to be completed, even though that period is much in excess of one year, does not make the statute applicable. A building contract is frequently such that it can be fully performed within one year, even though the fixed time limit is in excess of one year. If so, it is not within the one-year clause, however long the parties may expect to take or actually do take." [footnotes omitted].

*General Fed. Const. Inc.*, 283 Md. at 695, 393 A.2d 188 (1978).

■ We hold that on the record before us Griffith's oral agreement was not barred by the one-year provision of the Statute of Frauds. Consequently, we reverse and remand for further proceedings. In doing so, we note that we have decided only the narrow issue presented to us. We do not—at this stage cannot—know what the details of Griffith's oral contract may be, and how those details may bear on the ultimate result. Nor do we express any opinion on such issues as whether Towson is bound by Associates' contract with Griffith and the effect, if any, of § 14–105 of the Real Property Article.

JUDGMENTS REVERSED.

CASES REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

APPELLEES TO PAY THE COSTS.